Filed 8/25/14  In re N.F. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re N.F. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B253039 <br><br> (Los Angeles County <br> Super. Ct. No. CK37176) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> L.F., <br><br>    Defendant; <br><br> ERNEST F., SR., <br><br>    Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed in part, and reversed in part.

Catherine C. Czar, under appointment by the Court of Appeal, for Appellant.

John F. Krattli, County Counsel, Dawyn Harrison, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Nonoffending noncustodial parent Ernest F., Sr., (Ernest F.) appeals from the juvenile court's dispositional order. In particular, Ernest F. challenges the court's finding under Welfare and Institutions Code[1] section 361.2, subdivision (a), that placing his dependent son Ernest F., Jr., (Ernest) with him would be detrimental to Ernest's safety, protection, and well-being. Although the section 361.2, subdivision (a), issue has become moot, we reverse the court's finding of detriment because it is not supported by substantial evidence and has the potential to affect Ernest F. adversely in future dependency proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Ernest and his sister Nyla F. are the children of Ernest F. and L.F.[2] L.F. has another daughter, Mya H., whose father is L.F.'s boyfriend, Myron H., with whom the four family members lived. On September 21, 2013 the Los Angeles Department of Children and Family Services received a referral alleging physical abuse by L.F. of 17-year-old Nyla, sexual abuse by Myron H. of Nyla, and at risk sibling abuse of 15-year-old Ernest and nine-year-old Mya. During the ensuing investigation by a children's social worker (CSW) in the Department, L.F. stated that Ernest F. left the home when the

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    Ernest F. and L.F. do not have the same surname.

2

children were very young, did not spend time with the children, and did not help raise the children. Ernest told the CSW that his father lived in Washington state. Ernest said he could not remember the last time he saw or spoke to his father, and he had no contact information for him. The CSW spoke by telephone with Ernest F., who stated that Myron H.'s sexual abuse of Nyla had been going on for a very long time and "mother and all of her relatives" knew about it. Ernest F. told the CSW that he wanted custody of his children, had plenty of room for them, and wanted them placed with him. After completing the investigation, the CSW took the three children into protective custody and placed each child in a separate foster home.

The Department filed a petition against L.F. in September 2013. At the detention hearing, which Ernest F. attended, the court found a prima facie case that Nyla was a person described by section 300, subdivisions (a), (b), (d), and (j), and a prima facie case that Ernest and Mya were persons described by section 300, subdivisions (a), (b), and (j). The court detained all three children and placed them in foster care. At subsequent hearings, the juvenile court found that Ernest F. was the presumed father of Nyla and Ernest, and the court ordered the Department to prepare a jurisdiction and disposition report. The court also ordered the Department to interview and assess Ernest F. for placement.

The CSW interviewed Ernest F. Ernest F. told the CSW that "he wanted his children to be in Washington with him, but they do not wish to live with him. He stated he had not seen his children in 10 years and mother made it difficult to maintain a relationship with them." "[He] wanted custody of his children, but did not want to force them to come with him if they did not want to." The CSW also spoke with Ernest, who stated that he "did not wish to live with his father . . . because he has 'hatred and anger towards him.' He further stated, 'He cannot make up for lost time. I don't want to go to Washington. I don't want to visit him. It's weird.'"

At the disposition hearing, counsel for Ernest F. argued that the Department did not demonstrate by clear and convincing evidence that placing Ernest with Ernest F. "would be detrimental to the safety, protection, physical or emotional well-being of"

3

Ernest. Citing *In re Abram L.* (2013) 219 Cal.App.4th 452 and *In re John M.* (2006) 141 Cal.App.4th 1564, counsel for Ernest F. argued that neither a lack of relationship between a father and his child nor the child's desire that the court not place him with the father is "sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a)." The juvenile court ruled that these cases were distinguishable, and it found that placing Ernest with Ernest F. would not be in the child's best interest and "would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) The juvenile court stated: "I do factor in the fact that Ernest who is now 15 has made it clear that he himself feels it would be detrimental for him to be returned to . . . father for whom he's had no relationship . . . for most of his life." The juvenile court ordered that Ernest and the other children "be placed under the supervision of the Department . . . for placement in the approved home of [a] relative or the approved home of a nonrelative extended family member." Ernest F. appealed.

During the pendency of this appeal, and after Ernest F. had filed his opening brief, the juvenile court made the requisite findings and entered an order returning Ernest to the custody of his mother, L.F.[3] The court ordered the Department to provide "enhancement" services to Ernest F. and granted Ernest F. unmonitored visits with Ernest in Los Angeles County, including overnight visits if Ernest agreed, with the visits to take place at a location approved by the Department. The court continued its jurisdiction over the children.

## DISCUSSION

Ernest F. contends that there is no substantial evidence to support the juvenile court's finding under section 361.2 that placing Ernest with him would be detrimental to

---

[3] We granted the Department's motion for judicial notice of the juvenile court's April 24, 2014 minute order. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a); *In re Josiah Z.* (2005) 36 Cal.4th 664, 677; Cal. Rules of Court, rule 8.252(a).)

Ernest's "safety, protection, or physical or emotional well-being." (§ 361.2, subd. (a).) The Department contends that the issue is moot because the juvenile court has returned the children to the custody of their mother, L.F., and that, in any event, substantial evidence supports the court's order.

### A.     *Section 361.2*

When the juvenile court removes a child from his offending custodial parent under section 361, the nonoffending noncustodial parent may seek custody under section 361.2. The noncustodial parent is entitled to custody unless the juvenile court finds, by clear and convincing evidence, that placing the child with that parent would be detrimental to the child. Section 361.2, subdivision (a), provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." "'[I]t is the party opposing placement who has the burden to show by clear and convincing evidence that the child will be harmed if the noncustodial parent is given custody.' [Citation.]" (*In re Z.K.* (2011) 201 Cal.App.4th 51, 69.)

"Under Welfare and Institutions Code section 361.2, placement of the dependent child with a nonoffending, noncustodial parent must be the juvenile court's first priority if that parent requests the placement." (*In re M.C.* (2011) 195 Cal.App.4th 197, 224.) "'A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood.' [Citation.] '[T]o comport with the requirements of the due process clause, a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence.' [Citations.]" (*In re Abram L.*, *supra*, 219 Cal.App.4th at p. 461, quoting *In re Marquis D.*

5

(1995) 38 Cal.App.4th 1813, 1828, 1829; see *In re Isayah C.* (2004) 118 Cal.App.4th 684, 697.) In addition "the juvenile court . . . is charged with the statutory duty of making placement decisions in the minor's best interests." (*In re I.G.* (2014) 226 Cal.App.4th 380, 388.)

We review the juvenile court's finding of detriment supporting a disposition order under the substantial evidence standard by reviewing """"""the whole record in the light most favorable to the"""""" court's disposition finding and order """"""to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]."' [Citation.]" [Citation.]' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re Abram L.*, *supra*, 219 Cal.App.4th at p. 463, fn. 5; see *In re Marquis D.*, *supra*, 38 Cal.App.4th at p. 1825.) "We review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that placement would be detrimental to the child. Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt. [Citation.]." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262.)

### B.   *Mootness*

The Department argues that the only issue on appeal, whether the trial court erred by refusing to place Ernest with Ernest F. pursuant to section 361.2 after removing Ernest from the custody of L.F., is moot because the juvenile court has returned Ernest to the custody of L.F. Therefore, the Department maintains, reversal cannot accomplish Ernest F.'s desire for placement of Ernest with him under section 361.2, subdivision (a).

There is some merit in the Department's argument. Because the juvenile court has returned Ernest to his mother's custody, a prerequisite to an order under section 361.2 is missing: there no longer is an order removing the child from his custodial parent pursuant to section 361. The existence of Ernest F. as a noncustodial parent and his desire to assume custody of Ernest no longer entitles him (subject to exceptions) to custody under section 361.2, subdivision (a). Therefore, it is impossible for us to grant

6

Ernest F. any effective relief in this appeal. "'[W]e cannot simply unwind a juvenile case and presume that circumstances cannot have changed in the interim. They always do.' [Citation.]" (*In re Isayah C.*, *supra*, 118 Cal.App.4th at p. 701; see *In re E.T.* (2013) 217 Cal.App.4th 426, 436 ["[a]n appeal may become moot where subsequent . . . orders by the juvenile court[] render it impossible for the reviewing court to grant effective relief"]; *In re C.F.* (2011) 198 Cal.App.4th 454, 463 ["""[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by *subsequent acts or events*"""]; *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498 ["'[a]n appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief'"].) The appeal is effectively moot.

Nevertheless, dismissal for mootness "is not automatic, but 'must be decided on a case-by-case basis.' [Citations.]" (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488; see *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1055 [reviewing court must decide "[o]n a case-by-case basis . . . whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding"].) "'An issue is not moot if the purported error infects the outcome of subsequent proceedings.' [Citation.]" (*In re C.C.*, *supra*, at p. 1488; accord, *In re A.B.* (2014) 225 Cal.App.4th 1358, 1365.)

In this case, the juvenile court has retained jurisdiction over Ernest, and there have been continuing proceedings in the dependency case. The court's finding that placing Ernest with Ernest F. would be detrimental to Ernest's safety, protection, or well-being could be harmful to Ernest F. in future proceedings. "If the dependency court finds [under section 361.2] that placement with the noncustodial parent would be detrimental, the court proceeds as to that parent as if it were removing the child from the custodial, offending parent." (*In re John M.* (2013) 217 Cal.App.4th 410, 421.) As the court stated in *In re Marquis D.*, *supra*, 38 Cal.App.4th 1813, a finding under section 361.2, subdivision (a), that placement in the custody of the nonoffending noncustodial parent would be detrimental to the child "at the dispositional stage is critical to all further

7

proceedings. Should the court fail to place the child with the noncustodial parent, the stage is set for the court to ultimately terminate parental rights." (*In re Marquis D.*, *supra*, at p. 1829.) Therefore, in light of the possibility that the juvenile court's finding may impact future proceedings in this case and "in an abundance of caution" (*In re C.C.*, *supra*, 172 Cal.App.4th at p. 1489), we will consider the merits of Ernest F.'s appeal. (See *In re D.P.* (2014) 225 Cal.App.4th 898, 902 [exercising "discretion to reach the merits" of a potentially moot appeal where "the finding that mother intentionally hurt her daughter has the potential to impact future dependency proceedings"]; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015 [considering the merits of a potentially moot appeal "because the ruling could be prejudicial to [the mother] if she is involved in future child dependency proceedings"]; see also *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219, fn. 7 [court reversed jurisdictional findings against the father that "could adversely affect a future dependency or family law proceeding in which he may be involved"]; cf. *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492, 1494-1495 [declining to exercise discretion to reach merits of appeal where appellant "fail[ed] to suggest any way in which [the] finding actually could affect a future dependency or family law proceeding, and we fail to find one on our own"].)

C. *Substantial Evidence*

Ernest F. argues that there was no substantial evidence that placing Ernest with his father would create a substantial risk of detriment to Ernest's safety, protection, or well-being. According to Ernest F., "[t]he only reason the court gave for determining placement with [Ernest F.] would be detrimental to Ernest was Ernest's statement that he felt it would be detrimental. The court makes no mention of relying on other factors . . . ." Ernest points to the court's statement at the disposition hearing that the court was "factor[ing] in" Ernest's sentiments against returning to the custody of his estranged father.

Most of the evidence in the record is about Nyla and Myron H. There is very little evidence in the record about Ernest F. And most of the information about Ernest F. is

relatively stale. There is evidence of a 1999 dependency proceeding when Ernest was approximately two years old, based on allegations of physical abuse by L.F. A report in that case stated that Ernest F. had "a criminal history of arrests and convictions for inflicting corporal injury on a spouse[,] . . . a history of substance abuse and being under the influence in front of the minors," and the court subsequently found that Ernest F. was "incapable of providing the children with regular care/support and protection[] [w]hich places the children at risk of harm." The facts and circumstances of the 1999 dependency case, however, were 14 years old when the court held the disposition hearing in this case in October 2013. There was no evidence before the court in this case about what Ernest F. has been doing for the last 14 years, whether his current conduct and lifestyle would pose any risk or danger to Ernest, whether he is capable of caring for and protecting Ernest, or anything about what kind of person Ernest F. is today.[4] (See *In re John M.*, *supra*, 141 Cal.App.4th at p. 1570 [agency did not meet burden of proving detriment by clear and convincing evidence where social worker had no information that the out-of-state father was unable to meet the child's needs]; see also *In re Patrick S.*, *supra,* 218 Cal.App.4th at p. 1263 [*John M.* "stands for the principle that where a child has a fit parent who is willing to assume custody, there is no need for state involvement unless placement with that parent would create a substantial risk of detriment to the child"].) The investigating CSW concluded in the detention report that "caretaker absence/incapacity by [Ernest F. was] substantiated," but there is very little evidence, let alone clear and convincing evidence, to support that conclusion.[5]

---

**4** Because Ernest had not seen his father in 10 years, the instance of "being under the influence in front of the minors" had to be at least 10 years prior to the 2013 disposition report.

**5** The Department points to L.F.'s statement that she and Ernest F. "once got into a physical altercation when he came to visit the children and asked if he could take them on a trip to Washington" as evidence that Ernest F.'s "issues continued." There is no evidence, from L.F. or any other source, of when this confrontation occurred. According to Ernest, any such visit with Ernest F. was at least 10 years ago.

There is evidence that Ernest did not have a relationship with his father for at least 10 years. There is also evidence, however, that they were not completely estranged. Ernest F. told the CSW that he communicates with Ernest and Nyla through Facebook and that Nyla has his phone number on her cell phone. Ernest F. also stated that he wanted the court to place his children with him in Washington, that "he has plenty of room to take his children in," and that "he has always wanted his children, but [L.F] has kept them away from him." Moreover, "lack of a relationship between father and the children is not, by itself, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a)." (*In re Abram L.*, *supra*, 219 Cal.App.4th at p. 464.)

It is true that at the time of the detention report, Ernest could not remember the last time he saw or spoke to Ernest F. and had negative feelings toward his father. The trial court stated that "there was reference to Ernest making it quite clear that he believes it would be detrimental to him to be placed with" Ernest F., and that Ernest "has made it clear that he himself feels it would be detrimental for him to be returned to the . . . father for whom he's had no relationship for . . . most of his life." While Ernest's wishes are relevant, they alone do not justify a finding of detriment. (See *In re Abram L.*, *supra*, 219 Cal.App.4th at p. 464 [although 14-year-old and 15-year-old boys "were entitled to have their wishes considered, the boys were not entitled to decide where they would be placed"]; *In re Patrick S.*, *supra,* 218 Cal.App.4th at p. 1265 ["a child's preference is not the deciding factor in a placement decision, even when that child is a teenager"]; *In re John M.*, *supra*, 141 Cal.App.4th at p. 1570 [while 14-year-old boy "was entitled to have his wishes considered, he was not entitled to decide where he would be placed"].) Ernest F.'s right to care for, have custody of, and manage Ernest outweighs Ernest's feelings of discomfort and weirdness caused by the prospect of living with his father. (See *In re Patrick S.*, *supra,* 218 Cal.App.4th at p. 1265 ["[t]he liberty interest of a minor is not coextensive with that of an adult"].)

The evidence in this case showed that Ernest did not have a relationship with his father and did not want to live with him, and that Ernest F.'s lifestyle 10 to 14 years ago might have placed his children at risk of harm. That is not clear and convincing evidence

of detriment under section 361.2, subdivision (a).  (See *In re Patrick S.*, *supra,* 218 Cal.App.4th at p. 1263 ["[w]hen the parent is competent, the standard of detriment is very high"].)  Therefore, on this limited record, and in the absence of any reasonably current information about Ernest F., the juvenile court's order that placing Ernest with his father would be detrimental to Ernest's safety, protection, or physical or emotional well-being is reversed.  In the event the juvenile court ever orders the removal of Ernest again from the custody of L.F., then Ernest F., the Department, and Ernest will have an opportunity to present evidence on the issue whether placing Ernest with his father would be detrimental under section 361.2, subdivision (a).

### DISPOSITION

The order is reversed as to the finding of detriment.  In all other respects, the order is affirmed.

SEGAL, J.*

We concur:

PERLUSS, P. J.

WOODS, J.

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.