[No. G044654. Fourth Dist., Div. Three. July 27, 2011.]

In re C.F., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
WENDY C., Defendant and Appellant.

COUNSEL

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Appellant.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Julie J. Agin, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

OPINION

FYBEL, J.—

INTRODUCTION

Wendy C. is the mother of C.F., who was born in October 2008. In *In re C.F.* (June 30, 2010, G042987) (nonpub. opn.), we reversed a jurisdictional/ dispositional order that had sustained allegations of a dependency petition against Wendy C. pursuant to Welfare and Institutions Code section 300. After the remittitur was issued, Wendy C. filed a motion in the juvenile court to seek an order directing the Orange County Social Services Agency (SSA) to change its finding on a child abuse report from substantiated to unfounded and to transmit to the Department of Justice (DOJ) the modified finding with a request to remove Wendy C.'s name from the Child Abuse Central Index (CACI).

The juvenile court treated the motion as a petition for writ of mandamus under Code of Civil Procedure section 1085 or 1094.5 and denied the motion on the grounds Wendy C. failed to exhaust administrative remedies, a juvenile court lacks jurisdiction over petitions for writ of mandamus, and the motion was not related to C.F.'s best interests. Wendy C. appeals from the order denying her motion/writ petition. An order denying a petition for writ

of mandamus is appealable. (*Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1122 [272 Cal.Rptr. 273].)

Before addressing the merits, we consider SSA's motions to dismiss the appeal and to take additional evidence, and deny them. We affirm the order denying Wendy C.'s motion. The appropriate means to seek a modification of SSA's child abuse report was by a petition for writ of mandamus under Code of Civil Procedure section 1094.5 (administrative mandamus) following exhaustion of administrative remedies. When Wendy C. filed her motion, she had not commenced grievance procedures promulgated by the State Department of Social Services for challenging child abuse reports and therefore had not exhausted her administrative remedies.

More fundamentally, our prior opinion reversing the jurisdictional/dispositional order meant the juvenile court did not have jurisdiction over C.F. and, in effect, terminated the juvenile court proceedings. The juvenile court has authority to make orders pertaining to a dependent child falling within the juvenile court's jurisdiction. The juvenile court did not have jurisdiction over Wendy C.'s motion, even if it could be construed as pertaining to C.F., because the court did not have jurisdiction over C.F. We do not address the issue whether a juvenile court might ever have jurisdiction over a petition for writ of mandamus.

## FACTS AND PROCEDURAL HISTORY

### I.

### *Allegations of Dependency Petition*

In our prior opinion, we set forth the facts leading to C.F.'s detention and the allegations of the dependency petition, in relevant part, as follows:

"C.F. is the only child of [Wendy C.] and Father [I.F.], who are engaged to be married. . . .

"On May 1, 2009, C.F. received a 'well[-]baby physical' and six-month immunizations in both legs. After the immunizations, C.F. was unusually fussy and unhappy and stopped moving her right leg. At about 4:30 p.m. on May 5, C.F. awoke in her crib crying, screaming, and refusing to move. Her right leg was swollen and made a clicking sound when gently moved. [Wendy C.] called C.F.'s pediatrician. A medical assistant returned the call about two and a half hours later and told [Wendy C.] she could see the doctor the next day or take C.F. to the emergency room. Following the conversation

with the medical assistant, [Wendy C.] conducted Internet research on the immunizations given to C.F. and the risk of swine flu in Orange County hospitals.

"At about 11:00 p.m. on May 5, [Wendy C.] and Father brought C.F. to the emergency room of Children's Hospital of Orange County (CHOC) due to discomfort and swelling in her right leg. They said they thought C.F.'s leg might have been broken when she was forcefully held down during the immunizations or when C.F.'s leg was caught in the slats of a crib.

"C.F. was found to have a fractured right femur and facial abrasions. The treating pediatric physician believed the injuries were 'an indication of child abuse and neglect.' Dr. Andreef, one of C.F.'s pediatricians, examined C.F. and believed her injuries were 'suspicious.' Dr. Daphne Wong, the director of CHOC's Suspected Child Abuse Services Team, concluded C.F.'s injuries 'were not consistent with the child getting her leg caught in the crib' and it was not plausible a nurse would have broken the leg while giving an[] immunization.

"Father, who was in this country unlawfully, left the hospital when he heard C.F. had a broken leg. La Habra Police Officer Nick Wilson responded to CHOC's report of suspected child abuse. [Wendy C.] told Wilson that Father was her brother and had left because he was tired. When Wilson confronted her, she admitted lying, and told him Father was in the country illegally and feared deportation. [Wendy C.] told Wilson she believed C.F. might have broken her leg by getting it caught in the slats of the crib or when the nurse held C.F.'s legs while giving the immunizations. [¶] . . . [¶]

"The dependency petition, filed in May 2009, included allegations pursuant to [Welfare and Institutions Code] section 300(a) for infliction of serious physical harm (allegation[s] a-1 through a-4) [(count 1)] and allegations pursuant to section 300(b) for failure to protect (allegations b-1 through b-7) [(count 2)]. Allegation a-2 alleged: 'On or about May 6, 2009, Dr. Wong reported that the injuries sustained by the child are of nonaccidental origin and could not be a result of the child having gotten her leg stuck in a crib or as a result of being held down for her immunizations five days prior. The parents are unable to provide any reasonable explanation for the child's injuries, placing the child at risk of further harm in the care of the parents.'

"The failure to protect count was based on allegations [Wendy C.] and Father delayed seeking medical attention for C.F. Allegation b-5 alleged: 'On or about May 5, 2009, [Wendy C.] . . . and [Father] . . . failed to seek immediate medical attention for the child . . . . The parents' failure to seek immediate medical treatment caused the child to needlessly suffer severe emotional distress and undue physical pain.' " (*In re C.F., supra*, G042987.)

## II.

### *Reversal of Jurisdictional/Dispositional Order*

The jurisdictional/dispositional hearing began on August 10, 2009, and continued over eight days of testimony, concluding on October 7. The juvenile court found it had not been shown by a preponderance of the evidence the allegations of count 1 (infliction of serious physical harm) were true. The court found the allegations of count 2 (failure to protect) were true by a preponderance of the evidence on the ground Wendy C. and I.F.'s delay in seeking medical care for C.F. constituted a failure to protect under Welfare and Institutions Code section 300, subdivision (b). (*In re C.F., supra,* G042987.)

Wendy C. appealed from the juvenile court's jurisdictional/dispositional order, and we reversed. We concluded the substantiated allegations of the dependency petition did not meet the statutory requirement of showing C.F. was at substantial risk of serious physical harm at the time of the jurisdictional/dispositional hearing. We stated, "[t]he substantiated allegations established the first element under [Welfare and Institutions Code] section 300(b)—a specified form of parental neglect" in that "the delay in contacting the hospitals and taking C.F. to the emergency room was too long and was harmful to C.F." (*In re C.F., supra,* G042987.) But, we concluded, although Wendy C. exercised poor judgment by her delay in taking C.F. to the emergency room, "a single act of questionable parenting, without evidence it could recur and place the child at substantial risk of serious harm or illness, does not under the evidence in this case justify the exercise of jurisdiction under section 300(b)." (*Ibid.*)

## III.

### *Wendy C.'s Motion to Order Modification of Child Abuse Report*

In October 2010, Wendy C. filed a motion in the juvenile court, requesting (1) a factual finding that a child abuse report dated May 6, 2009, is unfounded, (2) an order directing SSA to change its finding on the child abuse report from substantiated to unfounded, and (3) an order directing SSA to transmit to the DOJ the modified finding with a request to remove Wendy C.'s name from the CACI. SSA opposed the motion on the ground Wendy C. had not exhausted her administrative remedies.

The juvenile court analyzed the motion as a petition for writ of mandate under Code of Civil Procedure section 1085 or 1094.5 because the remedy

sought was an order directing SSA, an administrative agency, to take a particular action. So treating the motion, the court concluded it did not have jurisdiction to grant the remedy sought. The court reasoned that denying the motion for lack of jurisdiction would not deprive Wendy C. of her rights or of a remedy because she could pursue a petition for administrative writ of mandamus in the superior court. The court reasoned too the motion did not create juvenile court jurisdiction by implicating C.F.'s best interests because "the basis for the motion is injury to [Wendy C.]'s reputation as opposed to some detriment to the child."

## The Child Abuse and Neglect Reporting Act

■ Wendy C. seeks to have modified a suspected child abuse report made pursuant to the Child Abuse and Neglect Reporting Act, Penal Code section 11164 et seq. (CANRA). It authorizes persons to report suspected child abuse or neglect to certain public agencies, including a county welfare department. (Pen. Code, §§ 11165.7, 11165.9, 11166.) The CANRA defines child·abuse or neglect to include "physical injury or death inflicted by other than accidental means upon a child by another person" (Pen. Code, § 11165.6) and "the negligent treatment or the maltreatment of a child by a person responsible for the child's welfare under circumstances indicating harm or threatened harm to the child's health or welfare" (*id.*, § 11165.2). ■ Reports of suspected child abuse or neglect and the names of persons making them are deemed confidential. (*Id.*, §§ 11167, 11167.5.)

The CANRA creates three levels of reports: unfounded, substantiated, and inconclusive. An " '[u]nfounded report' " is one "determined by the investigator who conducted the investigation to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse or neglect . . . ." (Pen. Code, § 11165.12, subd. (a).) A " '[s]ubstantiated report' " is one the investigator determines, "based upon evidence that makes it more likely than not that child abuse or neglect . . . occurred." (*Id.*, § 11165.12, subd. (b).) An " '[i]nconclusive report' " is defined as one the investigator determines "not to be unfounded, but the findings are inconclusive and there is insufficient evidence to determine whether child abuse or neglect . . . has occurred." (*Id.*, § 11165.12, subd. (c).)

■ An agency reviewing a report of alleged child abuse or neglect (here, SSA) must forward to the DOJ "a report in writing of every case it investigates of known or suspected child abuse or severe neglect" after the agency "has conducted an active investigation and determined that the report is not unfounded . . . ." (Pen. Code, § 11169, subd. (a).) The reporting agency must notify the known or suspected child abuser that he or she has been reported to the CACI. (*Id.*, § 11169, subd. (b).)

The DOJ is required to "maintain an index of all reports," called the CACI. (Pen. Code, § 11170, subd. (a)(1); see *id.*, § 11169, subd. (b).) The DOJ acts only as "a repository" of reports to be maintained in the CACI, while the reporting agencies are "responsible for the accuracy, completeness, and retention of the reports . . . ." (*Id.*, § 11170, subd. (a)(2).) The DOJ must retain reports for a period of 10 years from the date the most recent report is received. (*Id.*, § 11170, subd. (a)(3).)

The CANRA provides that reports may be removed from the CACI in two situations: (1) when a reporting agency notifies the DOJ a previously filed report "subsequently proves to be unfounded" (Pen. Code, § 11169, subd. (a)) or (2) when a person listed in the CACI only as a victim of child abuse or neglect is at least 18 years of age and files a written request to have his or her name removed (*id.*, § 11170, subd. (g)).

DISCUSSION

I.

*Motion to Dismiss Appeal and Motion to Take Additional Evidence*

SSA moved to dismiss the appeal on the ground it became moot once new information revealed Wendy C. had not been reported to the DOJ as the perpetrator of alleged child abuse or neglect. In support of the motion, SSA asks us to take as additional evidence a copy of the May 6, 2009 child abuse report maintained in the CACI and copies of printouts from the Child Welfare Services/Case Management System database of referrals regarding C.F. On the child abuse report, a box is checked for "No Suspects" and, under "Involved Parties," the report identifies the suspects as "Unknown."

Section 909 of the Code of Civil Procedure authorizes the Court of Appeal to take additional evidence "for the purpose of making the factual determinations or for any other purpose in the interests of justice." While this authority must be used " 'sparingly' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541]), appellate courts have considered postjudgment evidence in deciding whether an appeal is moot (e.g., *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1421 [35 Cal.Rptr.3d 577]).

The CACI report and the referral printouts are not postjudgment evidence—they existed when the juvenile court denied Wendy C.'s motion—and therefore would not cause the appeal to become moot. " '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by *subsequent acts or events.*' "

(*In re Dani R.* (2001) 89 Cal.App.4th 402, 404 [106 Cal.Rptr.2d 926], italics added; see *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498 [103 Cal.Rptr.3d 889] [" 'An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief.' "]; *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581] ["an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events"].)

Because the CACI report and referral printouts are not "subsequent acts or events," their existence and discovery cannot render the appeal moot. SSA argues the CACI report shows "[t]he parties below were operating under a misunderstanding of the facts." While the CACI report's failure to identify Wendy C. as the perpetrator of the alleged abuse might be relevant to the merits of her challenge to the report, or might lead her to reconsider the nature of relief to be sought, the report is not relevant to the narrow issue presented to us of whether the juvenile court had jurisdiction over that challenge. We therefore deny the motion to take additional evidence and the motion to dismiss the appeal.

## II.

### *The Juvenile Court Lacked Jurisdiction to Consider Wendy C.'s Motion*

Wendy C. argues the juvenile court had jurisdiction and inherent authority to order SSA to modify its child abuse report and therefore erred by denying her motion. We conclude Wendy C. failed to exhaust her administrative remedies and the juvenile court's jurisdiction over C.F. had, in effect, been terminated by our reversal of the jurisdictional/dispositional order.

■ The procedure by which an aggrieved party may challenge an agency's child abuse report under the CANRA is twofold. First, the aggrieved party must exhaust administrative remedies by completing the grievance process established by the State Department of Social Services. The California Health and Human Services Agency—State Department of Social Services has promulgated "Grievance Procedures for Challenging Reference to the Child Abuse Central Index" which require the party challenging a child abuse report to file a request for a grievance hearing. At the hearing, counsel may be present, evidence is presented, and witnesses may be called to testify. The grievance officer determines, based on the evidence presented at the hearing, whether the allegation of abuse or neglect is unfounded, inconclusive, or unsubstantiated.

Second, if the grievance process does not provide the desired relief, the aggrieved party may file a petition for writ of mandamus pursuant to Code of Civil Procedure section 1094.5 (administrative mandamus). (See *Burt v. County of Orange* (2004) 120 Cal.App.4th 273, 277 [15 Cal.Rptr.3d 373] [petition for writ of administrative mandamus to challenge SSA's report of suspected child abuse].) ■ "Administrative mandamus under section 1094.5 is appropriate to inquire 'into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal. . . .' [Citation.] By comparison, a writ of mandate under [Code of Civil Procedure] section 1085 is available where the petitioner has no plain, speedy and adequate alternative remedy; the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial right to performance. [Citations.] Where a petition challenges an agency's failure to perform an act required by law rather than the conduct or result of an administrative hearing, the remedy is by ordinary mandate pursuant to Code of Civil Procedure section 1085, not by administrative mandate pursuant to section 1094.5. [Citation.]" (*Conlan v. Bonta´* (2002) 102 Cal.App.4th 745, 751–752 [125 Cal.Rptr.2d 788].)

■ The grievance procedures used to challenge a child abuse report require a hearing at which evidence must be taken. Thus, a petition for writ of administrative mandamus under Code of Civil Procedure section 1094.5, rather than traditional mandamus under Code of Civil Procedure section 1085, would be the appropriate means for Wendy C. to challenge SSA's discretionary decision resulting from the grievance proceedings.

■ Exhaustion of administrative remedies is generally required before a party may judicially challenge an agency's decision. (*Lindeleaf v. Agricultural Labor Relations Bd.* (1986) 41 Cal.3d 861, 869–870 [226 Cal.Rptr. 119, 718 P.2d 106].) When Wendy C. filed her motion in the juvenile court, she had not initiated a grievance proceeding, and the juvenile court noted she had failed to exhaust her administrative remedies. In her reply brief, Wendy C. represents that since filing the notice of appeal, she has completed the grievance process. Exhaustion of administrative remedies is, however, "a jurisdictional prerequisite to resort to the courts." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942].) ■ When Wendy C. filed her motion seeking modification of SSA's child abuse report, she had not exhausted her administrative remedies; and, therefore, the juvenile court lacked jurisdiction to consider the motion, which, by means of the relief sought, was a petition for writ of administrative mandamus.

The juvenile court also lacked jurisdiction for the fundamental reason that in *In re C.F., supra,* G042987, we reversed the jurisdictional/dispositional

order by which the juvenile court had assumed jurisdiction over the dependency proceeding pursuant to Welfare and Institutions Code section 300. In effect, the juvenile court proceeding had been terminated, and there was no pending juvenile court proceeding involving C.F., in which Wendy C. could bring a motion or writ petition to challenge the child abuse report.

■ The juvenile court is a special department of the superior court and has powers limited to those granted by and incidental to the Arnold-Kennick Juvenile Court Law, Welfare and Institutions Code section 200 et seq. (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 6 [7 Cal.Rptr.3d 237].) "Under the Juvenile Court Law, the juvenile court is authorized to make orders pertaining to abused or neglected children who come within the court's jurisdiction." (*Id.* at p. 7.) C.F. was not within the juvenile court's jurisdiction once we reversed the jurisdictional/dispositional order. Thus, the juvenile court did not have jurisdiction over Wendy C.'s motion, even if it pertained to C.F.

■ Citing *In re Amber S.* (1993) 15 Cal.App.4th 1260 [19 Cal.Rptr.2d 404], Wendy C. argues the juvenile courts have "inherent powers" to "enable them to carry out their duties and ensure the orderly administration of justice." As stated in that case, "[a]ll courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from article VI, section 1 of the California Constitution and are not dependent on statute. [Citations.] These powers entitle courts to ' ". . . adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council." [Citation.]' [Citation.] Thus, a trial court has the inherent authority to create a new form of procedure in a particular case, where justice demands it." (*Id.* at p. 1264.) But, before exercising such inherent powers to adopt new methods of practice, the court must have jurisdiction, and, in this case, we reversed the order investing the juvenile court with jurisdiction over C.F. Further, the method for challenging an administrative order is specified by statute—Code of Civil Procedure section 1094.5—so the juvenile court would not have inherent authority to adopt some other method or procedure.

As this discussion should make abundantly clear, Wendy C. is not without means to seek modification of SSA's child abuse report. Filing a motion in the juvenile court proceeding, after we reversed the jurisdictional/dispositional order, was not one of them.

### DISPOSITION

The order denying Wendy C.'s motion for an order directing SSA to change its finding on the child abuse report from substantiated to unfounded

and to transmit such finding to the DOJ is affirmed. In the interest of justice, no party shall recover costs incurred on appeal.

O'Leary, Acting P. J., and Ikola, J., concurred.