Filed 11/19/15; pub. order 12/10/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


IMPERIAL COUNTY DEPARTMENT
OF SOCIAL SERVICES et al.,

    Plaintiffs and Respondents,

    v.

S.S.,

    Defendant and Appellant.

D068026

(Super. Ct. No. JJP3201)


APPEALS from an order of the Superior Court of Imperial County, William D. Quan, Judge. Affirmed.

    Valerie N. Lankford for Defendant and Appellant A.A. (Minor).

    Rosemary Bishop for Defendant and Appellant S.S.

    Katherine K. Turner, County Counsel, and Rosario T. Gonzalez, Deputy County Counsel, for Plaintiff and Respondent.

We are confronted with the legal issue of whether a juvenile court may retain jurisdiction over a dependency case after the subject child has died, for the purpose of learning the child's cause of death and/or appointing a guardian ad litem to investigate potential tort claims for the child's estate. The juvenile court determined it must terminate its jurisdiction under the circumstances. We agree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2014, 21-month-old A.A.[1] (Child) was detained and removed from the home and care of her mother, As.A. (Mother). While in the family home, Child had been allowed to play with lit matches, exposed to heavy marijuana smoke, and surrounded by a variety of drug paraphernalia and drugs in plain sight. Mother was arrested and temporarily incarcerated. Child's father, S.S. (Father), who lived separately, had a history of substance abuse and declined to take custody of Child.

Mother and Father did not contest the juvenile court's jurisdiction under Welfare and Institutions Code section 300, subdivision (b),[2] and Child was placed with foster parents, the C.'s. At the C.'s, Child was reportedly healthy, happy, and enjoying visits with Mother, who wanted to regain custody of Child.

At the December 15, 2014 disposition hearing, the Imperial County Department of Social Services (the Department) reported that Child had passed away the previous day.

---

[1]     Child's legal name varied throughout the record. Her birth certificate indicates a legal name with initials "A.A.," but she is sometimes referred to by a name with initials "A.D."

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

Almost a week prior, Child had been found unresponsive in the C.'s home and taken to the hospital, but died several days later. Child had suffered a severe brain injury, among other injuries, and a doctor at the children's hospital where Child was brought opined that it was "very likely inflicted trauma." The Department informed the court that multiple investigations were ongoing regarding the circumstances of Child's death. The Department was conducting a separate investigation for the welfare of other children who had been living in the C.'s home. The police department was conducting a criminal investigation, and other governmental agencies were investigating the C.'s for foster care and day care licensing purposes.

The next day, the court considered the Department's request for "Disclosure of Juvenile Case File," in which the Department sought certain documents from Child's case file for use in a different dependency case. The court granted the Department's request. Mother asked that Child's case be held open for another 30 days so that a death certificate could be obtained, and the court agreed.

At a review hearing in January 2015, the Department reported that it could obtain an informational copy of Child's death certificate within a few days, but it would not contain an official "cause of death" because the medical examiner's report would not be finalized for another 60 days. Mother and Father stated that they *knew* that Child was dead, but wished to know the *cause* of their daughter's death. The court, observing it still did not have Child's official death certificate, agreed to hold open the case for another 90 days.

In April 2015, the Department filed a "Request to Terminate Jurisdiction and Dismiss Dependency Petition," arguing that Child was not a person described in section 300 for purposes of the court's jurisdiction and attaching a copy of Child's death certificate. In a hearing on the Department's request, Child's counsel stated that he would be filing a motion for appointment of separate counsel to investigate whether Child had a potential tort claim, i.e., a guardian ad litem (GAL). Although Mother was represented by counsel in a separate civil proceeding regarding Child's death, Mother and Father wanted the juvenile case held open due to their desire to know what had caused Child to die.[3] In colloquy with counsel, the court commented that it believed the Department's role in the case was terminated, Mother and Father had other legal avenues for seeking information, and any GAL would benefit Child's estate rather than Child. The court requested the parties to file points and authorities on the issues so that the court might fully understand its obligations prior to terminating its jurisdiction. A further hearing was set in May 2015.

In the interim, Child's counsel moved for a GAL to investigate potential civil claims on behalf of Child's estate, as well as objected to dismissal of the juvenile case until any GAL's investigation was complete. In response, the Department filed a "Second Request to Terminate Jurisdiction and Dismiss Dependency Petition and Opposition to Motion to Appoint Tort Guardian Ad Litem." The Department's position continued to be that Child was no longer "a person" falling into the court's jurisdiction under section 300,

---

[3]     On appeal, Father states that he is also separately represented by counsel in the civil proceeding.

4

and the juvenile court had proof of Child's death. Likewise, the Department argued that the court's authority to appoint a tort GAL was premised on the need to protect the interests of a living child, distinct from a child's estate.

Following a hearing, the court terminated its jurisdiction and denied Child's motion for a GAL. The court stated: "I don't understand or see how we can retain or continue jurisdiction over a file or a child once the child has deceased, especially under Welfare and Institutions Code, when our goal is to protect the welfare of the child[,] and in the court's opinion, that would require a living child . . . ." The court further discussed that any cause of action arising from the child's death (e.g., a wrongful death suit) would run to the child's heirs or parents. The court also commented that when a person has died, the person's interests need to be championed in a different venue, such as probate court.

Child filed a timely appeal of the court's order terminating jurisdiction and denying appointment of a GAL. Father timely appealed the court's order terminating jurisdiction.

DISCUSSION

Despite Child's undisputed death, Child and Father contend the juvenile court had authority to maintain an open case, and issue orders, for the purpose of obtaining Child's cause of death. Child also contends that the court was authorized to appoint a GAL to investigate potential tort claims on behalf of Child's estate. The facts of this case are undisputed, and we review questions of law de novo. (*Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 835.)

5

The issue presented to us is not addressed in the Welfare and Institutions Code nor has it been discussed in case law. Perhaps inherent in the notion of *child* protection—at the heart of dependency cases—is the existence of a living child, such that a need for review has not previously presented itself. In any event, we conclude the juvenile court properly terminated jurisdiction when it did.

"The juvenile court is a special department of the superior court and has powers limited to those granted by and incidental to the Juvenile Court Law, Welfare and Institutions Code section 200 et seq. [Citation.] 'Under the Juvenile Court Law, the juvenile court is authorized to make orders pertaining to abused or neglected children who come within the court's jurisdiction.' " (*In re C.F.* (2011) 198 Cal.App.4th 454, 466.)

In dependency cases, a juvenile court has jurisdiction to make orders pertaining to "[a]ny child who comes within any of the [statutory] descriptions" set forth in subdivisions (a) through (j) of section 300. (§ 300.) The purpose of dependency law "is to provide maximum safety and protection for children who are *currently* being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are *at risk* of that harm." (§ 300.2, italics added.) As numerous courts have reiterated, "[t]he paramount purpose underlying dependency proceedings is the protection of the child. [Citations.] 'The parents do not represent a competing interest in this respect.' " (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214-1215.)

6

Specifically here, where the juvenile court maintained jurisdiction over Child under section 300, subdivision (b), the Legislature has explicitly declared, "[t]he child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (§ 300, subd. (b)(1).) When Child's death was confirmed, there could no longer be any risk of her suffering future harm. Moreover, the legal framework surrounding dependency cases, with its desire for reunification of families, or if not possible, development of a permanent placement plan, contemplate that a juvenile court's orders will be made for the benefit of living children. (See, e.g., §§ 361.5 [discussing provision of reunification services]; 366.21 [schedule of hearings to review child's placement and progress]; 366.26, subd. (b) [placement preference to ensure stable, permanent homes for children].)

Father argues that the juvenile court had "inherent authority" to keep the case open and determine Child's cause of death. We disagree since a court is first required to have jurisdiction before it can rely on "inherent powers" to issue orders. (*In re C.F., supra*, 198 Cal.App.4th at p. 466 [inherent powers permit a court to adopt new methods of practice not specified by statute or rule, but the court must first have jurisdiction].) A juvenile court is authorized to consider a request for disclosure of a child's case file. (*In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1551; § 827, subd. (a)(2).) Further, the court can satisfy itself that a child is, in fact, deceased as represented to be, and therefore, no longer in need of protection. However, once a juvenile court has performed its statutorily

7

authorized duties and made any necessary incidental orders, continued judicial action would exceed its jurisdiction.

Given that the court properly terminated its jurisdiction, it correctly denied Child's motion for a GAL. Child's counsel cites cases pertaining to the court's authority to appoint a GAL to investigate minors' potential tort claims, but in each cited case, the minor was alive. (E.g., *In re Nicole H.* (2011) 201 Cal.App.4th 388, 392-393 [separate GAL required to investigate potential tort claim arising from 13-year-old girl's report of rape by another minor in foster home]; *San Diego County Department of Social Services v. Superior Court* (2005) 134 Cal.App.4th 761, 765 [12-year-old boy reported he was molested at a group home].) The court's authority to appoint a separate GAL for a *living* child was consistent with dependency law's overarching purpose of protecting the child, which is not the case here. The law provides that Child's successor-in-interest may pursue any of her surviving claims (Code Civ. Proc., § 377.30), and Child's heirs may pursue any of their own tort claims arising from Child's death (Code Civ. Proc., § 377.60 [wrongful death action]). It appears that Child's parents have taken steps in this regard.

Child's parents understandably wish to know how their daughter passed away while placed in a foster home. They and other members of the public have a method of accessing Child's case file for relevant information. (*In re Elijah S., supra*, 125 Cal.App.4th at p. 1556 [purpose of changes to statute governing disclosure of juvenile case files was to make "it *easier* for the press and the public to investigate the death of suspected victims of abuse and neglect" and to " 'open the workings of the dependency court and the foster care system to public scrutiny . . . .' " (Original italics.)].)

8

Regardless, the juvenile court was not authorized to retain jurisdiction indefinitely for the purpose of determining Child's cause of death. Consequently, the trial court properly terminated its jurisdiction.

## DISPOSITION

The juvenile court's order terminating jurisdiction and denying appointment of a GAL is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


IRION, J.

Filed 12/10/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Plaintiffs and Respondents, v. S.S., Defendant and Appellant. | D068026 (Super. Ct. No. JJP3201) |

THE COURT:

The opinion in this case filed November 19, 2015 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent 's request pursuant to California Rules of Court, rule 8.1120(a), for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN
Acting Presiding Justice

cc: All Parties