# IN THE SUPREME COURT OF CALIFORNIA

In re S.R. et al., Persons Coming
Under the Juvenile Court Law.

---

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN
AND FAMILY SERVICES,
Plaintiff and Respondent,

v.

S.F.,
Defendant and Appellant.

S285759

Second Appellate District, Division Eight
B326812

Los Angeles County Superior Court
22CCJP03750A and 22CCJP03750B

---

December 1, 2025

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Evans, and Jenkins[*] concurred.

Justice Liu filed a concurring opinion, in which Justice Evans concurred.

---

[*] Retired Associate Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re S.R.

S285759


Opinion of the Court by Liu, J.


California's Child Abuse Central Index (CACI) is a database comprised of substantiated reports of "child abuse or severe neglect." (Pen. Code, § 11169, subd. (a); see *id.*, § 11170; all undesignated statutory references are to the Penal Code.) Certain state agencies are required to forward qualifying reports to the California Department of Justice (DOJ) for inclusion in the CACI. (See §§ 11165.9, 11169, subd. (a).) "[I]nformation included in the CACI is available to a wide variety of state agencies, employers, and law enforcement," and inclusion of a parent's conduct in the CACI carries significant consequences for the parent. (*In re D.P.* (2023) 14 Cal.5th 266, 279.) Once listed in the CACI, an individual remains listed until the age of 100, at which point the listing is removed. (§ 11169, subd. (f).)

The issue here is one we left open in *In re D.P.*: Whether a parent's appeal from a juvenile court's jurisdictional finding survives a mootness challenge where the parent shows that an agency must report the allegation underlying the court's finding for inclusion in the CACI. The answer is yes. As the Los Angeles County Department of Children and Family Services (the Department) concedes, it is proper for a court to presume an agency will fulfill its reporting duty. Reversal of a jurisdictional finding can redress that harm by prompting removal of the parent from the CACI (§§ 11169, subd. (a), 11170, subd. (a)) or by preserving a parent's right to a grievance hearing to

1

challenge an agency's failure to reclassify the report as unsubstantiated (§§ 11169, subds. (d), (e), 11170, subd. (a)). Thus, a parent demonstrates "a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings" (*In re D.P.*, *supra*, 14 Cal.5th at p. 273) when the parent shows that the challenged allegation is one that an agency must report for inclusion in the CACI.

Here, the Department acknowledges that it is required to report the allegation against S.F. (Mother) to the DOJ for inclusion in the CACI. There is also no genuine dispute that Mother will suffer harm from being included in the CACI. Because Mother has demonstrated that this specific consequence could be rectified or avoided if she prevails in challenging the allegation on appeal, "the case is not moot, and merits review is required." (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.) Accordingly, we reverse the order dismissing Mother's appeal and remand to the Court of Appeal for further proceedings.

## I.

The proceedings below involved three of Mother's daughters, ages 22, 16, and 12 at the time of the relevant events. The juvenile court's jurisdictional finding was based on one event that began when the two older daughters physically confronted Mother at her home. Several days before the confrontation, Mother directed her eldest daughter to move out of her home due to a disagreement regarding that daughter's boyfriend residing in the home. When that daughter left, the middle daughter ran away with her older sister. Shortly thereafter, those two daughters took the youngest daughter from Mother's home without permission. They ultimately

returned the youngest, who has special needs, to Mother's care after Mother threatened to call the police.

The next morning, the two older daughters confronted Mother at her home. Mother and her middle daughter screamed at each other. Mother said she would call the police. One witness described the two daughters as standing in a way "like they were trying to fight [Mother]" and asked "what do you do when [your kids] are trying to harm you?" Another witness said the daughters "kept saying they wanted to get back in the house and they wanted [Mother] to leave, like a take over." When the middle daughter was "coming at" Mother and getting between Mother and the eldest daughter, Mother hit the middle daughter twice and pushed or struck her with the pole end of a shovel. Believing her eldest daughter was grabbing a weapon from her purse, Mother brandished a camping knife. She shouted, "This is my house! Y'all don't pay shit!" and called someone and said her daughter "was about to get killed." Mother made threats to both daughters' lives. Mother called the police and the Department's hotline.

When responders came, Mother reported she was acting in self-defense. The middle daughter reported, among other things, that a visible injury on her side torso was caused by Mother striking her with the shovel. She also said that Mother threatened to kill her, had repeatedly threatened to harm her, and had previously made hateful comments to her when she came out as gay. Based on the incident, the Department removed the middle and youngest daughters. Following the detention hearing, the middle and youngest daughters stated that the eldest daughter used the "sister code" to manipulate their answers to the responders about the incident and surrounding circumstances. The middle daughter reported the

injury on her side torso was not caused by Mother using the shovel and appeared dark from her rubbing it at the eldest daughter's direction. The middle daughter also said Mother unintentionally hit her when she was physically intervening between Mother and the eldest daughter.

At the combined jurisdictional/dispositional hearing, the parties agreed that Mother was defending herself against her older daughters, but they disagreed as to whether her actions were reasonable. The juvenile court found: "Mother's reaction in this incident was not reasonable and longer than the perceived threat lasted. [¶] I would imagine there was a lot of disrespectful language that was directed at Mother, but the court does not find that her grabbing a shovel and hitting [her middle daughter], leaving a mark on her, and, then grabbing a knife and threatening to kill them was justified; and, in fact, her actions escalated the situation." Based on Mother's physical violence against her daughters, the juvenile court sustained the petition and determined it had jurisdiction under Welfare and Institutions Code section 300. As to the disposition, the court removed the middle and youngest daughters from Mother's home, ordered Mother's participation in counseling, and ordered monitored visitation. Mother appealed.

At the six-month review hearing, the juvenile court returned the middle and youngest daughters to Mother. At the 12-month review hearing, the juvenile court terminated jurisdiction. Several months later, the Court of Appeal informed the parties it was considering dismissing Mother's appeal as moot and invited supplemental briefing. Mother urged the Court of Appeal to conduct a merits review based on her challenge to the allegation underlying the jurisdictional finding that was reportable to the DOJ for inclusion in the CACI.

In dismissing the appeal, the Court of Appeal determined that Mother's appeal was moot and declined to exercise its discretion in reviewing the merits. The Court of Appeal reasoned, "The jurisdictional finding is limited to one event started by the children's attempt to physically harm their mother, and the juvenile court made no findings of stigmatizing or pernicious conduct." The Court of Appeal rejected Mother's position that because "she may have been reported to the statewide [CACI]," merits review was warranted. The Court of Appeal reasoned: "Without proof of this allegation, we decline to act upon it."

We granted review to decide whether a parent's appeal from a juvenile court's jurisdictional finding survives a mootness challenge where the parent shows that the allegation underlying the court's finding is reportable for inclusion in the CACI.

## II.

"A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' [Citation.] A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' [Citation.] For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.)

"This rule applies in the dependency context. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60 ['the critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error'].) A reviewing court must ' "decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding." ' [Citation.] We review de novo the Court of Appeal's determination that this case is moot." (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.)

"The Courts of Appeal have held that when a juvenile court's finding forms the basis for an order that continues to impact a parent's rights — for instance, by restricting visitation or custody — that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction. (See, e.g., *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548 [father could challenge jurisdictional finding after jurisdiction terminated because finding was the basis of order restricting his visitation and custody rights]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432 [father could challenge jurisdictional finding after jurisdiction terminated because finding was the basis of order stripping father of custody and imposing a stay-away order that remained in effect]; *In re A.R.* (2009) 170 Cal.App.4th 733, 740 [termination of jurisdiction did not moot appeal where father's contact with child was 'severely restricted as a direct result of the jurisdictional and dispositional findings and orders'].) Because reversal of the jurisdictional finding calls into question the validity of orders based on the finding, review of the jurisdictional finding can grant the parent effective relief." (*In re D.P.*, *supra*, 14 Cal.5th at pp. 276–277.) But when "the juvenile court terminates its

jurisdiction without issuing any order that continues to impact the parents," "complaining of 'stigma' alone is insufficient to sustain an appeal. The stigma must be paired with some effect on the [parent's] legal status that is capable of being redressed by a favorable court decision." (*Id.* at p. 277.)

"[W]hen a parent has demonstrated a specific legal or practical consequence that will be averted upon reversal, the case is not moot, and merits review is required. When a parent has not made such a showing, the case is moot, but the court has discretion to decide the merits nevertheless." (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.) As we explain further below, merits review is required here because this case is not moot.

The CACI lists persons who have substantiated reports of child abuse or severe neglect against them. The Child Abuse and Neglect Reporting Act (CANRA) (§§ 11164–11174.3) defines general neglect, severe neglect, and child abuse. (§§ 11165.2, 11165.6.) Before forwarding a report of child abuse or neglect to the DOJ, certain agencies must conduct an "active investigation" and determine if the report is "substantiated." (§ 11169, subd. (a); see § 11165.9.) A " '[s]ubstantiated report' " "means a report that is determined by the investigator who conducted the investigation to constitute child abuse or neglect . . . based upon evidence that makes it more likely than not that child abuse or neglect, as defined, occurred. A substantiated report shall not include a report where the investigator who conducted the investigation found the report to be false, inherently improbable, to involve an accidental injury, or to not constitute child abuse or neglect." (§ 11165.12, subd. (b).)

"When an agency forwards a substantiated report [of child abuse or severe neglect], the agency must provide written notice

to the person whose conduct was reported to the CACI. (Pen. Code, § 11169, subd. (c).) Persons listed in the CACI are generally entitled to challenge the basis for their inclusion at a hearing before the reporting agency. (*Id.*, § 11169, subd. (d).) . . . However, if 'a court of competent jurisdiction has determined that suspected child abuse or neglect has occurred,' the hearing request 'shall be denied.' (*Id.*, § 11169, subd. (e).)" (*In re D.P.*, *supra*, 14 Cal.5th at p. 279.)

"[T]he CACI listing plays an integral role in obtaining many rights under California law, including employment, licenses, volunteer opportunities, and even child custody." (*Humphries v. County of L.A.* (9th Cir. 2009) 554 F.3d 1170, 1178.) "Inclusion in the CACI carries several consequences for parents. A CACI check is required for 'any prospective foster parent, or adoptive parent, or any person 18 years of age or older residing in their household.' (Health & Saf. Code, § 1522.1, subd. (b).) California law also requires state agencies to search the CACI before granting a number of rights and benefits, including licensing to care for children in a daycare center ([*id.*], § 1596.877, subd. (b)) and employment in child care (*id.*, § 1522.1, subd. (a)). Even if an agency or employer is not legally required to check the CACI, it may do so as a matter of internal policy. CACI information is available to a variety of entities, including law enforcement entities investigating a case of known or suspected child abuse (Pen. Code, § 11170, subd. (b)(3)), a court appointed special advocate program conducting a background investigation for employment or volunteer candidates (*id.*, subd. (b)(5)), an investigative agency, probation officer, or court investigator responsible for placing children or assessing the possible placement of children (*id.*, subd. (b)(7)), a government agency conducting a background

8

investigation of an applicant seeking employment as a peace officer (*id.*, subd. (b)(9)), a county child welfare agency or delegated county adoption agency conducting a background investigation of an applicant seeking employment or volunteer status who will have direct contact with children at risk of abuse or neglect (*id.*, subd. (b)(10)), and out-of-state agencies making foster care or adoptive decisions (*id.*, subd. (e)(1)). These agencies and employers are not barred from hiring or granting a license to an applicant listed in the CACI, but they may be hesitant to do so. A CACI search may also occur if there are allegations of child abuse or neglect; the Department's investigation in this case involved making a CACI search for all adults living in [the child]'s household, including parents and grandparents. (See Sen et al., *Inadequate Protection: Examining the Due Process Rights of Individuals in Child Abuse and Neglect Registries* (2020) 77 Wash. & Lee L.Rev. 857, 869.) Moreover, because the information included in the CACI is available to a wide variety of state agencies, employers, and law enforcement, it may be stigmatizing to the person listed." (*In re D.P.*, *supra*, 14 Cal.5th at p. 279.)

## III.

In assessing mootness, we first consider whether Mother has shown an ongoing harm. We hold that Mother has met this requirement by demonstrating that the sustained allegation of child abuse has been or will be included in the CACI. Section 11169, subdivision (a) makes clear that the sustained allegation of Mother's physical violence toward her middle daughter "shall" be reported to the DOJ for inclusion in the CACI. The Department acknowledges as much and concedes it is proper for courts to presume, absent a contrary showing, that an agency has reported or will report to the DOJ an allegation subject to

inclusion in the CACI. Courts generally presume an official duty will be regularly performed (Evid. Code, § 664; see *In re D.P.*, *supra*, 14 Cal.5th at p. 280), and the parties recognize that the Department has a duty under CANRA to report Mother for inclusion in the CACI (§ 11169, subd. (a)). Because there is no time limit regarding this duty to report, it is possible that an agency will forward a report following the resolution of juvenile dependency and appellate proceedings. We agree with the parties that it is not speculative to conclude that Mother is or will be listed in the CACI, which carries serious legal consequences for her lifetime.

In *In re D.P.*, the father claimed his appeal from a juvenile court's jurisdictional finding was not moot based on his potential inclusion in CACI. We rejected the claim because he failed to show "that the general neglect allegation against him was reported for inclusion in the CACI" or "that this type of [general neglect] allegation is reportable." (*In re D.P.*, *supra*, 14 Cal.5th at p. 280.) We determined "[t]hese two layers of uncertainty render[ed] Father's CACI claim too speculative to survive a mootness challenge." (*Ibid.*) Moreover, the Department represented that the finding of general neglect against the father had not been reported (*id.* at pp. 280–281) and that it was "not eligible for inclusion in the CACI" (*id.* at p. 281). Here, by contrast, there is no dispute that Mother's conduct is reportable, and there has been no representation by the Department that the report has not been and will not be forwarded to the DOJ.

While Mother has sufficiently shown that the conduct underlying the jurisdictional finding is reportable, we acknowledge that placing the burden on parents to ascertain their CACI inclusion status can create, as described by amici, "an ethical quandary" for their counsel. At oral argument, the

Department represented that counsel's act of inquiring about whether a client will be reported for CACI inclusion may have the effect of prompting the Department to report the parent when the Department otherwise would not have done so. It is not obvious how counsel should proceed in a situation that falls somewhere between this case, where it is undisputed that the allegations trigger a reporting requirement, and *In re D.P.*, where the agency represented that the allegations were not reportable.

Here we have no occasion to decide whether a case is moot if, for example, a parent shows the conduct at issue is likely but not indisputably reportable. Yet, in light of the dilemma that counsel may encounter in this context, we emphasize that appellate courts have discretion to conduct a merits review of the parent's claim even if the case is moot. (See *In re D.P.*, *supra*, 14 Cal.5th at p. 285 [discussing a myriad of nonexhaustive reasons why the "Courts of Appeal have understandably opted to exercise their inherent discretion to decide certain challenges to juvenile court jurisdictional findings, notwithstanding mootness"]; *id.* at pp. 282–287.)

We next consider whether the harm to Mother's legal status "is capable of being redressed by a favorable court decision." (*In re D.P.*, *supra*, 14 Cal.5th at p. 277.) Mother argues her inclusion in the CACI can be redressed by reversal of the juvenile court's jurisdictional finding. Specifically, Mother says reversal of the finding that she committed severe child abuse would result in her removal from the CACI or, at the least, would preserve her right to an administrative grievance hearing to challenge any refusal by the Department to reclassify its report as not substantiated. (See *In re C.F.* (2011) 198 Cal.App.4th 454, 458 ["The appropriate means to seek a

11

modification of [an agency's] child abuse report [is] by a petition for writ of mandamus under Code of Civil Procedure section 1094.5 (administrative mandamus) following exhaustion of administrative remedies [i.e., grievance procedures under section 11169, subdivision (d)]."].)

CANRA provides that "[i]f a report has previously been filed which subsequently proves to be not substantiated, the [DOJ] shall be notified in writing of that fact and shall not retain the report." (§ 11169, subd. (a).) Under this provision, where a court reverses a jurisdictional finding of severe child abuse for lack of sufficient evidence, an individual may no longer be listed in the CACI. CANRA also provides that a person who is included in the CACI may request a grievance hearing before the reporting agency. (*Id.*, subd. (d).) This grievance hearing "shall satisfy due process requirements." (*Ibid.*) "If, after a hearing pursuant to subdivision (d) or a court proceeding described in subdivision (e), it is determined the person's CACI listing was based on a report that was not substantiated, the agency shall notify the [DOJ] of that result and the [DOJ] shall remove that person's name from the CACI." (*Id.*, subd. (h).) A ruling at an administrative grievance hearing can be challenged via writ of mandamus and is subject to independent review by a superior court. (*Id.*, subd. (d); Code Civ. Proc., § 1094.5, subd. (a).) "An order denying a petition for writ of mandamus is appealable." (*In re C.F.*, *supra*, 198 Cal.App.4th at pp. 458–459.)

Where a juvenile court sustains an allegation of child abuse, a parent may later be estopped from challenging his or her inclusion in the CACI. (See § 11169, subd. (e) [if "a court of competent jurisdiction has determined that suspected child abuse or neglect has occurred," the hearing request "shall be

denied"]; *In re D.P.*, *supra*, 14 Cal.5th at p. 279.) If an appellate court reverses the juvenile court's jurisdictional finding on the ground that there was insufficient evidence of the conduct underlying the reportable allegation or that the underlying conduct was lawful, a parent will not be prevented from obtaining a grievance hearing before the reporting agency. (See § 11169, subd. (e).)

Mother has demonstrated "a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings." (*In re D.P.*, *supra*, 14 Cal.5th at p. 273.) By reversing a juvenile court's jurisdictional finding, it is possible for a parent to have her listing removed from the CACI. In the event the agency does not withdraw the underlying report, the court's reversal ensures that the parent is not estopped from pursuing a grievance hearing to contest her continued inclusion in the CACI. As we explained in *In re D.P.*, the grievance hearing "is an important protection; according to amicus curiae ACLU of Southern California, roughly 30 percent of CACI reports are removed after a grievance hearing is held." (*Id.* at p. 279.)

The Department notes that reversal of the jurisdictional finding may not "automatically mandate the removal of a parent from the CACI." But automatic removal from the CACI is not required to defeat a mootness challenge. It is sufficient that reversal would either result in the agency withdrawing the report from the DOJ such that removal from the CACI would occur or, at the least, preserve a parent's right to a grievance hearing that would not otherwise be available.

The Department maintains that "Mother's appeal is moot because Mother does not dispute that the abuse occurred."

Specifically, the Department asserts that because Mother does not challenge the fact that she committed the physical acts against her daughter, Mother would not be entitled to any relief pursuant to a grievance hearing or otherwise, even assuming Mother was acting in reasonable self-defense. According to the Department, acting in reasonable self-defense to ward off an attack by a minor constitutes child abuse under section 11165.6. However, it is not necessary to resolve this issue in order to conclude that merits review is required. The salience of the Department's argument only arises in the event that the Court of Appeal reverses the jurisdictional finding based on Mother's self-defense claim and the Department reports her for inclusion in the CACI despite that ruling. For purposes of addressing a mootness challenge, courts need not predict what child welfare authorities will actually do with respect to a CACI report. Instead, courts should examine whether reversal can redress an ongoing harm. Because Mother has sufficiently demonstrated redressability of a specific, ongoing harm (i.e., regaining her right to a grievance hearing), we need not consider the Department's view that lawful self-defense does not alter whether a parent's conduct toward her minor child is reportable under the CANRA.

The Department posits that the purpose of CANRA is distinct from and broader than the purpose of juvenile jurisdiction, such that a reversal of a juvenile court finding may have no practical effect on whether a parent is listed in the CACI. Mother and amici stress that CANRA, which appears in the Penal Code and defines abuse with "virtually identical language" as the crime of abuse, concerns abuse that is more limited in nature than abuse that can form the basis of a juvenile court jurisdictional finding. Although these arguments

exceed the scope of the question before us, we agree with Mother and amici that the criteria for a CACI listing based on "child abuse or severe neglect" under CANRA generally appear to be narrower than the grounds for juvenile dependency jurisdiction under Welfare and Institutions Code section 300. We emphasize the import of a grievance hearing as an opportunity for parents to elucidate the particulars of such matters that are relevant to their case. And while the Department also posits that inclusion in the CACI is "[n]ot [a]lways [p]rejudicial," such as when an individual is subject to deportation or lifetime imprisonment, we decline to address these hypotheticals, as there is no dispute that Mother will suffer harm based on her inclusion in the CACI. Because Mother has demonstrated a legal and practical consequence that is capable of being redressed by reversal of the juvenile court's jurisdictional finding, her appeal is not moot and requires merits review.

## CONCLUSION

We reverse the order dismissing Mother's appeal and remand to the Court of Appeal for further proceedings consistent with our opinion. On remand, Mother may raise arguments challenging the allegation of child abuse or neglect, including her claim of self-defense.

**LIU, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**JENKINS, J.** [*]

---

[*] Retired Associate Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

In re S.R.

S285759


Concurring Opinion by Justice Liu


In challenging Mother's appeal as moot, the Los Angeles County Department of Children and Family Services (the Department) argues that even assuming Mother acted in reasonable self-defense, Mother's conduct is still reportable for inclusion in the California's Child Abuse Central Index (CACI). The premise of the Department's position is that lawful self-defense does not affect whether conduct toward a minor constitutes child abuse under the Child Abuse and Neglect Reporting Act (CANRA). It is unnecessary to resolve the Department's argument for purposes of this mootness challenge. (Maj. opn., *ante*, pp. 13–14.) But because the Department's position may prevent parents, including Mother, from obtaining relief at a later point in the proceedings when there is no entitlement to counsel, I address the argument and explain why a person's conduct toward a minor that constitutes lawful self-defense cannot provide a basis for including that person in the CACI.

An individual's right to self-defense is codified by statute. Penal Code section 692 provides: "Lawful resistance to the commission of a public offense may be made: [¶] 1. By the party about to be injured; [¶] 2. By other parties." (All undesignated statutory references are to the Penal Code.) Section 693 provides in pertinent part: "Resistance sufficient to prevent the offense may be made by the party about to be injured: [¶] 1. To prevent an offense against his person, or his family, or some

1

member thereof." And Civil Code section 50 says: "Any necessary force may be used to protect from wrongful injury the person or property of oneself . . . ." A person may "lawfully resist or defend against a continuing assault or battery" with "such force as is reasonable under the circumstances." (*People v. Myers* (1998) 61 Cal.App.4th 328, 335.) "[T]he law recognizes the justification of self-defense not because the victim 'deserved' what he or she got, but because the defendant acted reasonably under the circumstances. Reasonableness is judged by how the situation appeared to the defendant." (*People v. Minifie* (1996) 13 Cal.4th 1055, 1068, italics omitted.)

Child abuse is defined under CANRA in sections 11165.1 to 11165.6. Section 11165.6 provides: "[T]he term 'child abuse or neglect' includes physical injury or death inflicted by other than accidental means upon a child by another person, sexual abuse as defined in Section 11165.1, neglect as defined in Section 11165.2, the willful harming or injuring of a child or the endangering of the person or health of a child, as defined in Section 11165.3, and unlawful corporal punishment or injury as defined in Section 11165.4." Section 11165.6 further provides: " 'Child abuse or neglect' does not include a mutual affray between minors" or "an injury caused by reasonable and necessary force used by a peace officer acting within the course and scope of his or her employment as a peace officer."

These provisions cannot be read to mean that a parent (or any individual) has committed "child abuse or neglect" when she uses reasonable force to defend herself against an attack by a minor. Although there are specific provisions regarding mutual fighting between minors and reasonable force by police officers, those circumstances are distinct from self-defense and do not suggest the Legislature intended "child abuse or neglect" to

2

include lawful acts of self-defense as defined in background statutes. (See §§ 692, 693; *In re Greg F.* (2012) 55 Cal.4th 393, 407 ["The Legislature is presumed to be aware of all laws in existence when it passes or amends a statute."].) Although the Legislature could have specified that child abuse or neglect would encompass acts of self-defense " 'notwithstanding' " longstanding statutes affirming the lawfulness of such acts, it did not. (*Id.* at p. 406.)

*People v. Clark* (2011) 201 Cal.App.4th 235 and *Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72 (*Gonzalez*) are instructive. *Clark* held that the trial court erred by refusing to instruct the jury on self-defense as a defense to direct child abuse under section 273a. (*Clark*, at p. 248.) In so holding, the appellate court noted that self-defense was codified "in nonexclusive terms" and "discern[ed] no legislative intent to preclude application of the defense in cases where the threat of harm to the person comes from a minor. Nor does the plain language of any of the self-defense statutes indicate a legislative intent to prohibit those accused of direct child abuse from asserting the defense." (*Ibid.*) The court refused to " 'read into the statute a limitation that is not there' " and, considering " 'the absence of unequivocal language,' " refused to " 'ascribe to the Legislature an intention to penalize the exercise of a right it has specifically bestowed.' " (*Id.* at pp. 248–249; see *id.* at p. 249 [finding "no reason why the codified defense of self-defense should not be available to anyone who lawfully resists the application of force regardless of the source of the force and regardless of the charges levied by the prosecution"].) It would make little sense for reasonable resistance to a minor's use of force to be lawful yet reportable conduct for inclusion in the CACI. (See *Calvillo-Silva v. Home*

*Grocery* (1998) 19 Cal.4th 714, 730 ["acts that are intended or likely to cause serious injury are not . . . wrongful in character" if they constitute the use of " 'necessary force' " to protect or defend oneself or one's property from " 'wrongful injury' "], quoting Civ. Code, § 50, disapproved on other grounds in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19.)

*Gonzalez* held that because "the parental privilege to impose reasonable physical discipline upon a child must be incorporated into CANRA[]," the conduct of parents is "not reportable child abuse if it constituted the reasonable imposition of discipline." (*Gonzalez, supra*, 223 Cal.App.4th at p. 90.) The court noted that two definitions of child abuse in CANRA were "borrowed almost verbatim from the statutes defining two forms of criminal child abuse." (*Id.* at p. 85, italics omitted.) It then noted the longstanding rule that " 'a parent has a right to reasonably discipline his or her child and may administer reasonable punishment without being criminally liable.' " (*Id.* at p. 86.) The court concluded that "a parent accused of child abuse for purposes of reporting under CANRA may rely on the same disciplinary privilege that limits a parent's criminal culpability." (*Id.* at p. 87.) So too here: An individual accused of child abuse for purposes of reporting for CACI inclusion under CANRA may rely on the same self-defense claim that limits one's criminal culpability.

In sum, lawfully acting in reasonable self-defense to ward off an attack by a minor does not constitute child abuse under CANRA. Accordingly, the Department may not report such lawful conduct for CACI inclusion, must update the Department of Justice to remove an individual from the CACI when a determination is made that the conduct constituted lawful self-

defense, and should otherwise refrain from advancing that argument when an individual shows that lawful self-defense formed the basis of inclusion in the CACI.

**LIU, J.**

**I Concur:**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re S.R.

_____

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX Dismissal order filed 5/31/24 – 2d Dist., Div. 8
**Rehearing Granted**

_____

**Opinion No.** S285759
**Date Filed:** December 1, 2025

_____

**Court:** Superior
**County:** Los Angeles
**Commissioner:** Lisa A. Brackelmanns

_____

**Counsel:**

Sean Angele Burleigh, under appointment by the Supreme Court, for Defendant and Appellant.

Law Office of Rita Himes and Rita K. Himes for Legal Services for Prisoners with Children, Community Legal Services in East Palo Alto, Lounsbery Law Office, PC, Riley Khorram, Attorneys at Law, The Law Office of Paul Metzger and Daniel V. Cota & Associates, PC, as Amici Curiae on behalf of Defendant and Appellant.

Sania Chandrani, Aditi Fruitwala; Amanda Young, Neil K. Sawhney; Minouche Kandel, Ariana Rodriguez; and Julia A. Gomez for the American Civil Liberties Union, American Civil Liberties Union of Northern California, American Civil Liberties Union of Southern California, American Civil Liberties Union of San Diego & Imperial Counties, Children's Rights and National Center for Youth Law as Amici Curiae on behalf of Defendant and Appellant.

Law Office of Michelle D. Peña, Michelle D. Peña; Brian Okamoto, Public Defender (Orange); Dependency Advocacy Center and Sarah Cook for California Appellate Defense Counsel and California Dependency Trial Counsel as Amici Curiae on behalf of Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Sean Angele Burleigh
Attorney at Law
P.O. Box 1976
Cortaro, AZ 85652
(415) 692-4784

Tracey F. Dodds
Principal Deputy County Counsel
500 West Temple Street, 6th Floor
Los Angeles, CA 90012
(213) 893-7231