Filed 2/5/24  In re Omari H. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re OMARI H., et al., Persons Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KASEEM H.,<br><br>    Defendant and Appellant. | B323254<br><br>(Los Angeles County Super. Ct. No. 22CCJP02056) |

APPEAL from orders of the Superior Court of Los Angeles County, Kristen Byrdsong, Juvenile Court Referee.  Dismissed in part and conditionally affirmed with directions in part.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Kaseem H. appeals from the juvenile court's jurisdiction findings and disposition orders declaring his children, four-year-old Omari H. and two-year-old twins Kamiayah H. and Kaseem H. Jr., dependent children of the court under Welfare and Institutions Code section 300, subdivisions (a), (b), and (j).[1] Kaseem argues that substantial evidence did not support the court's finding Kaseem's marijuana use put the children at substantial risk of serious physical harm; that the court abused its discretion by ordering him to undergo drug testing and, if he tested positive or missed a test, to participate in a substance abuse treatment program; and that substantial evidence did not support the court's removal order.

We conclude that, because the children's mother, Arkell P., did not appeal from jurisdiction findings based on her substance abuse, and because Kaseem did not appeal from jurisdiction findings based on his mental health issues and the domestic violence between him and Arkell, his appeal from the jurisdiction findings based on his substance abuse is not justiciable. Therefore, we dismiss his appeal from the jurisdiction findings. We also conclude that the court did not abuse its discretion in

_____

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

ordering Kaseem to undergo drug testing and, if necessary, treatment and that, although the court applied the wrong standard of proof in making its findings supporting removal, the error was harmless.

Finally, Kaseem contends the Los Angeles County Department of Children and Family Services and the juvenile court failed to comply with the inquiry provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. The Department concedes, and we agree, Kaseem is correct. Therefore, we conditionally affirm the juvenile court's orders and direct the court to ensure the Department complies with the inquiry and, if necessary, notice provisions of ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Department Investigates a Referral Concerning the Children*

In April 2022 the Department received a report stating that Kaseem hit Arkell in the face and that Omari, Kamiayah, and Kaseem Jr. witnessed the incident. The Department had received a similar report one month earlier, in March 2022, when Kaseem hit Arkell in the face after an argument about the behavior of Kaseem's 10-year-old son, A'mir.[2] After the March 2022 incident, Arkell left the home with Omari, Kamiayah, and Kaseem Jr., and Kaseem followed them. Kaseem was arrested.

---

[2] The Department had recently placed A'mir with Kaseem. After the March 2022 incident, the Department removed A'mir from Kaseem.

A Department social worker interviewed Arkell and Kaseem about the April 2022 incident. Arkell said that she and Kaseem argued about Kaseem's refusal to help her care for the children, that she hit Kaseem first, and that Kaseem hit her in the face twice and slammed her face into the floor. Arkell said the children were in the bedroom at the time. Arkell said that she and Kaseem were under a lot of stress and that they frequently argued about A'mir, who had severe behavioral and mental health issues. Arkell said she had been diagnosed with depression and anxiety, but was not taking any medication or receiving any mental health services. She said she smoked marijuana in the car every night while the children slept.

Kaseem told the social worker that he and Arkell had argued, but that, because of his mental illness, he did not remember hitting Arkell. Kaseem stated that he was bipolar schizophrenic and that he was not taking medication or receiving mental health services. Kaseem said that he had been hospitalized in a psychiatric facility when he was younger, that he had been prescribed medication, and that he did not like the side effects. Kaseem also said he smoked marijuana in his car daily to help with his mental health.

B. *The Department Files a Petition Under Section 300, and the Juvenile Court Detains the Children*

On May 26, 2022 the Department filed a petition on behalf of Omari, Kamiayah, and Kaseem Jr. alleging counts under section 300, subdivisions (a), (b), and (j). The Department alleged Kaseem and Arkell had "a history of engaging in violent altercations in the presence of the children," which placed the children "at risk of serious physical harm." The Department also

4

alleged Kaseem and Arkell had "a history of substance abuse," were "current abuser[s] of marijuana," and had mental and emotional problems, which rendered them "incapable of providing regular care for the children." Finally, the Department alleged the children's half brother, Tyler, received permanent placement services because of Arkell's mental health problems, which placed "the children at risk of serious physical harm."[3]

At the detention hearing the juvenile court found the Department had made a prima facie showing Omari, Kamiayah, and Kaseem Jr. were persons described by section 300 and ordered their continued detention from Kaseem and Arkell. The court ordered monitored visitation for Kaseem and Arkell and required them to visit separately.

C.    *The Juvenile Court Sustains the Petition and Removes the Children*

At a jurisdiction hearing in July 2022 the juvenile court found Omari, Kamiayah, and Kaseem Jr. were persons described by section 300, subdivisions (a), (b), and (j). The court sustained, as amended, counts b-1 (failure to protect due to domestic violence), b-2 (marijuana use by Arkell), b-3 (marijuana use by Kaseem), b-5 (Kaseem's mental and emotional problems), and j-1 (neglect of half sibling Tyler due to Arkell's mental and emotional problems). The court struck counts a-1 (nonaccidental serious physical harm due to domestic violence) and b-4 (Arkell's mental and emotional problems). The court ordered visitation for Kaseem and Arkell.

---

[3]    Arkell's son Tyler was in a legal guardianship with Arkell's aunt and living with Arkell's mother.

At a disposition hearing in August 2022 the juvenile court declared Omari, Kamiayah, and Kaseem Jr. dependent children of the court and removed them from Kaseem and Arkell. The court ordered Kaseem to participate in domestic violence counseling, individual counseling, and parenting classes. The court also ordered Kaseem to undergo random and on-demand drug testing, and, if he tested positive or missed a test, to participate in a full drug treatment program. The court ordered separate, monitored visitation for each parent. Kaseem timely appealed from the court's jurisdiction findings and disposition orders.[4]

## DISCUSSION

### A. *Kaseem's Appeal from the Jurisdiction Findings Is Not Justiciable*

Kaseem argues substantial evidence did not support the juvenile court's jurisdiction findings based on his marijuana use. Because Kaseem did not challenge the court's other jurisdiction findings, however, his appeal is not justiciable.

The "principle that '[d]ependency jurisdiction attaches to a child, not to his or her parent' [citation], means that "'[a]s long as

---

[4] In addition to appealing from the order requiring drug testing and treatment if necessary, Kaseem stated in his notice of appeal he was appealing from the orders "for parents not to arrive together" and to "take parenting for special needs." Because in his brief Kaseem addresses only the order requiring drug testing and treatment, he has abandoned any challenge to the other orders identified in his notice of appeal. (See *In re M.B.* (2022) 80 Cal.App.5th 617, 620, fn. 1.)

there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'" [citation].  Thus, where jurisdictional findings have been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot.  [Citation.]  The same is true where there are multiple findings against one parent; the validity of one finding may render moot the parent's attempt to challenge the others." (*In re D.P.* (2023) 14 Cal.5th 266, 283-284; see *In re D.M.* (2015) 242 Cal.App.4th 634, 638-639.)[5]

The juvenile court made jurisdiction findings against both parents, and Kaseem does not challenge the jurisdiction findings against Arkell.  Moreover, Kaseem challenges only the findings against him based on his marijuana use, and not the findings against him based on domestic violence or those based on his mental and emotional problems.  Therefore, his challenge to the jurisdiction findings based on drug use is not justiciable.  (See *In re D.P.*, *supra*, 14 Cal.5th at p. 283; see, e.g., *In re Madison S.* (2017) 15 Cal.App.5th 308, 328-329 [appeal from a jurisdiction finding under section 300, subdivision (b), was nonjusticiable

---

[5]      Although the Supreme Court in *In re D.P.*, *supra*, 14 Cal.5th at pages 283 to 284 stated that a challenge to less than all jurisdiction findings may be "moot," we use the broader term "nonjusticiable."  (See *In re C.F.* (2011) 198 Cal.App.4th 454, 463 [an ""'action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by *subsequent acts or events*'"'].)  In deciding whether a dependency appeal is nonjusticiable, either because it is moot or for other reasons, the critical factor is whether the appellate court can provide any effective relief.  (See *In re N.S.* (2016) 245 Cal.App.4th 53, 60 [mootness]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [nonjusticiability].)

where the mother did not challenge a finding under section 300, subdivision (j)]; *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["Because jurisdiction was proper on other grounds, mother cannot expect a more favorable result, and we need not consider her appeal."].)

Kaseem argues his challenge to the jurisdiction findings based on his marijuana use is justiciable because those findings served as the basis for the court's orders requiring him to undergo drug testing and, if necessary, drug treatment. It is true a challenge to some but not all of the jurisdiction findings may be justiciable where the parent demonstrates "a specific legal or practical consequence that would be avoided upon reversal of the jurisdictional findings," for example, where the challenged finding "'serves as the basis for dispositional orders that are also challenged on appeal.'" (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.)

But that rule does not apply here. The jurisdiction finding regarding Kaseem's drug use was not the only basis for the drug testing and treatment orders. The juvenile court had discretion to make those disposition orders as part of Kaseem's case plan based on the other (unchallenged) jurisdiction findings. (See *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1008 [juvenile court acted within its discretion in ordering random drug and alcohol testing for a parent, even though the court did not sustain a count based on the parent's alcohol use]; see also *In re K.T.* (2020) 49 Cal.App.5th 20, 25 ["The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did

8

not give rise to the dependency proceedings."]; *In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 [once the juvenile court sustains a petition, the court has "the authority to order a nonoffending parent to participate in services"].)  As we will discuss, the court had discretion to order Kaseem to undergo drug testing and participate in drug treatment to protect the children, even if the court's findings regarding Kaseem's drug use did not support dependency jurisdiction.  Therefore, Kaseem's challenge to the jurisdiction findings regarding his drug use is not justiciable.[6]

> B.     *The Juvenile Court Did Not Abuse Its Discretion in Ordering Kaseem To Submit to Drug Testing and, if Necessary, Drug Treatment*

Kaseem argues the juvenile court abused its discretion in ordering him to undergo random drug testing and, if he tested positive or missed a test, to participate in a drug treatment program.  The court did not abuse its discretion.

Section 362, subdivision (a), provides "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support" of a child described by section 300.  Such orders may include "any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section."  (§ 362, subd. (d); see *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.)  "At disposition, the

---

[6]     Kaseem has not asked us to exercise our discretion to consider the merits of his nonjusticiable appeal.  (See *In re D.P.*, *supra*, 14 Cal.5th at p. 282 ["Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute."].)

juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071; see *In re I.R.* (2021) 61 Cal.App.5th 510, 522 ["We review the juvenile court's disposition case plan for an abuse of discretion."].)

Kaseem contends there was insufficient evidence that his marijuana use presented a substantial risk of harm to the children or that he was under the influence of marijuana when he cared for the children. But there was. Kaseem admitted that he had smoked marijuana since he was 15 or 16 years old and that he smoked every day (or every other day) in his car "to help with his mental health." Kaseem stated he stopped using marijuana when a Department social worker asked him to, but he resumed smoking to deal with "stress and some life situations."

Kaseem argues that using marijuana was "beneficial to his mental health" and recommended by his health care provider. However, the issue before the juvenile court was not whether Kaseem's marijuana use was legal or beneficial to him, but what would best serve and protect the children's interests. (See *In re D.P., supra,* 44 Cal.App.5th at pp. 1071-1072 ["the paramount concern always must be the child's best interests, and we cannot reverse a disposition order reasonably fashioned to eliminate the conditions that led to dependency jurisdiction, no matter how burdensome its requirements may seem from the parent's

perspective"].)  At the disposition hearing, counsel for the Department argued, and the juvenile court found, it was not safe for someone under the influence of marijuana to supervise one-year-old twins and a two-year-old child with special needs.  Given Kaseem's dependence on marijuana, his nearly daily use, and the demands of caring for not one but three very young children, the court did not abuse its discretion in ordering Kaseem to undergo drug testing and to participate in a drug treatment program if he tested positive or missed a test.  (See *In re N.R.* (2023) 15 Cal.5th 520, 558 ["It is reasonable for courts to infer that very young children require a substantial degree of close supervision."].)

C.    *The Juvenile Court Applied an Incorrect Standard of Proof in Removing the Children from Kaseem*

"The burden of proof at the jurisdictional phase is preponderance of the evidence; the burden of proof at disposition is clear and convincing evidence."  (*In re Ma.V.* (2021) 64 Cal.App.5th 11, 24.)  Thus, before the juvenile court may remove a child from a parent, the court must find by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and that there are no reasonable means by which the child can be protected without removal.  (§ 361, subd. (c).)  "'This heightened burden of proof [at disposition] is appropriate in light of the constitutionally protected rights of parents to the care, custody and management of the children.'"  (*Ma.V.*, at p. 24; see *In re Henry V.* (2004) 119 Cal.App.4th 522, 530 ["Due process requires the findings underlying the initial removal order to be based on clear and convincing evidence."].)

11

Kaseem argues the juvenile court erred in applying a preponderance-of-the-evidence standard of proof when it removed the children. He is correct. At the disposition hearing the juvenile court stated it was finding, "by a preponderance of the evidence, the children remaining in the home of the parents would pose a substantial danger to the children's physical health, safety, protection, physical and emotional wellbeing." That is not the right standard.

The Department contends Kaseem forfeited his argument the juvenile court applied the wrong standard of proof by not objecting at the hearing. A "reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. . . . [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; see *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1127.) However, "application of the forfeiture rule is not automatic," and a reviewing court may exercise its discretion to reach an "important legal issue," even if the issue is forfeited. (*S.B.*, at p. 1293.) Whether the juvenile court applied the wrong standard before removing the children from Kareem is sufficiently important that we will exercise our discretion to consider the issue. (See *In re C.M.* (2017) 15 Cal.App.5th 376, 385 [exercising discretion to consider a forfeited issue where "the juvenile court applied a different standard and burden of proof, thus altering the statutory framework that governs detention or removal of a dependent child"]; *In re Frank R.* (2011) 192 Cal.App.4th 532, 539 ["we are reluctant to enforce the [forfeiture] rule when it conflicts with due process"].)

D. *But the Juvenile Court's Error Was Harmless*

The "erroneous application of the preponderance of the evidence standard rather than the clear and convincing evidence standard [is] not . . . structural error requiring automatic reversal. Instead, the reported cases have analyzed the error under the *Watson* standard and required a showing it was reasonably probable the appellant would have achieved a more favorable result under the proper standard of proof." (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 535.) Because clear and convincing evidence supported removal, it is not reasonably probable Kaseem would have received a more favorable result had the juvenile court applied the correct standard of proof.

The juvenile court found there were no reasonable means to prevent removal "given the unresolved domestic violence and untreated mental health and substance abuse issues. It's concerning parents are still arriving to visits together, despite their very lengthy domestic violence history." That domestic violence history included three reported incidents, in October 2019, March 2022, and April 2022, the latter two of which occurred in the presence of the children. The October 2019 incident occurred when Arkell was nine months pregnant with Omari, and at that time Arkell told police she and Kaseem had three previous physical altercations, making at least six *known* incidents of domestic violence. In addition, Kaseem had five interactions with law enforcement for domestic violence predating his relationship with Arkell and had been ordered to complete a 52-week domestic violence program.

Despite this extensive history, Kaseem denied he had a history of domestic violence and did not remember hitting Arkell.

13

Nor did Kaseem take responsibility for any of the past incidents of domestic violence; instead, he blamed his 10-year-old son A'mir for causing the problems that led to domestic violence between Kaseem and Arkell and argued that, because A'mir no longer lived with Kaseem, domestic violence was not likely to recur. (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 [denial of domestic violence increases the risk it will recur]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].) Kaseem's failure to acknowledge or address the domestic violence issue was particularly concerning because Kaseem and Arkell continued to interact. Although Kaseem moved out of the apartment, he did not have a permanent home and stayed with relatives or slept in his car. Kaseem continued to help Arkell with transportation and purchasing food, and they arrived together for visits, even if only one of them was visiting the children. Thus, the risk of violence between Kaseem and Arkell (and the resulting risk of harm to the children) remained.

In addition to the history of domestic violence, Kaseem's mental health issues also supported removal. Kaseem was diagnosed as bipolar schizophrenic, and the court ordered him to take psychotropic medication. Kaseem stated that, although he was in and out of psychiatric hospitals when he was younger, he no longer had any mental health problems and did not need medication. He also attributed his inability to remember hitting Arkell to his mental illness. Although at the disposition hearing Kaseem submitted a letter from a health clinic provider stating he "does not need psychotropic medications at this time,"

14

overwhelming evidence supported the juvenile court's concern about Kaseem's untreated mental health issues.[7]

Given Kaseem's history of mental illness, his daily use of marijuana, and his failure to take responsibility for his long history of domestic violence, Kaseem has not shown that, had the juvenile court applied the standard of proof of clear and convincing evidence, it is reasonably probably he would have achieved a more favorable result. Therefore, the court's error in applying the wrong standard was harmless.

### E. *Remand Is Required for the Department and the Juvenile Court To Comply with ICWA*

"ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq.) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316), including "'ask[ing] each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child"'" (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500, review granted July 26, 2023, S279743; see 25 C.F.R. § 23.107(a); *In re J.C.* (2022) 77 Cal.App.5th 70, 77). California law "'more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire"

---

[7] The Department contends the letter did not specify the provider's professional capacity, but the letter in the record contains the handwritten designation "PMHNP-BC," an initialism for board-certified psychiatric mental health nurse practitioner. (See *Osborne v. Colvin* (D.Neb. 2015) 95 F.Supp.3d 1147, 1157.)

15

whether a child in the dependency proceeding "is or may be an Indian child."'" (*J.C.*, at p. 77; see § 224.2, subd. (a); *In re A.R.* (2022) 77 Cal.App.5th 197, 237.)

"[S]ection 224.2, subdivision (b), requires the child protective agency to ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 77; see *In re H.V.* (2022) 75 Cal.App.5th 433, 437; Cal. Rules of Court, rule 5.481(a)(1).) Although this duty is "commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*J.C.*, at p. 77; see *Haaland v. Brackeen* (2023) 599 U.S. 255, 266 [when a state court adjudicates a foster care or adoption proceeding, "ICWA governs from start to finish"]; *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 319.) In addition, the "'juvenile court "has a responsibility to ascertain that [the child protective agency] has conducted an adequate investigation"' [citation], and must determine whether ICWA applies to the child's proceedings." (*In re G.H.* (2022) 84 Cal.App.5th 15, 31; see § 224.2, subd. (i)(2); *J.C.*, at p. 78; Cal. Rules of Court, rule 5.481(b)(3).) The court may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

16

In the Indian Child Inquiry Attachment to the petition (Judicial Council form ICWA-010(A)), the Department stated that on May 4, 2022 a social worker questioned Arkell and that the social worker had no reason to believe Omari, Kamiayah, or Kaseem Jr. was or may be an Indian child. In its detention report the Department stated: "The Indian Child Welfare Act does not apply. On 05/04/22 [Arkell] verbally denied that the children have any Indian Ancestry." Arkell and Kaseem completed parental notification of Indian status forms (Judicial Council form ICWA-020), on which they indicated they had no known Indian ancestry. At the May 31, 2022 detention hearing the juvenile court found it had no reason to know Omari, Kamiayah, or Kaseem Jr. was an Indian child under ICWA.

Kaseem argues, the Department concedes, and we agree the Department did not comply with its duty of inquiry because it did not ask any known extended family members whether Omari, Kamiayah, or Kaseem Jr. is or may be an Indian child. (See *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 319 ["Regardless of a parent's response concerning his or her possible Indian ancestry on the ICWA-020 Parental Notification of Indian Status form, . . . section 224.2, subdivision (b), requires the agency to ask the child, the parents, extended family members and others who have an interest in the child whether the child is, or may be, an Indian child." (Fn. omitted.)].) Those family members include Arkell's mother (whom the Department contacted about the children's placement); Kaseem's sister, brother, and father; and Arkell's brother and father. The juvenile court also erred in finding ICWA did not apply and in failing to ensure the Department conducted an adequate inquiry. (See *Rylei S.*, at p. 320.) Therefore, we direct the juvenile court to ensure the

17

Department conducts a proper inquiry.  (See *id*. at p. 326; *In re J.K.* (2022) 83 Cal.App.5th 498, 507.)

## DISPOSITION

Kaseem's appeal from the juvenile court's jurisdiction findings is dismissed as nonjusticiable.  The court's disposition orders removing Omari, Kamiayah, and Kaseem Jr. from Kaseem and requiring Kaseem to submit to drug testing and, if he tests positive or misses a test, to participate in a substance abuse treatment program, are conditionally affirmed.  The juvenile court is directed to ensure the Department fully complies with the inquiry and, if necessary, notice provisions of ICWA and related California law, including inquiring about possible Indian ancestry from extended family members.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.